## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SECURA Insurance Company, f/k/a ) | |
| SECURA INSURANCE, a Mutual ) | |
| Company, a Wisconsin insurance company, ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. |
| ) | |
| POST TIME CATERING, INC, an Illinois ) | |
| corporation, ) | |
| Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| LARRY CANNON, an Illinois Resident, ) | |
| Necessary Party. ) | |

## PETITION FOR RESCISSION OR REFORMATION
## OF INSURANCE POLICIES & DECLARATORY JUDGMENT

NOW COMES the Petitioner, SECURA Insurance Company, f/k/a SECURA INSURANCE, a Mutual Company, by its undersigned attorneys, and for its Petition for rescission and/or reformation of insurance policies issued to POST TIME CATERING, INC., as well as for its Petition for declaratory judgment, states as follows:

## NATURE OF THIS PROCEEDING

1.       This is a diversity action pursuant to 28 U.S.C. § 1332. In Count I and Count II, SECURA seeks, in conformity with the Illinois statute 215 ILCS 5/154, to fully rescind as void *ab initio* multiple insurance policies that SECURA issued to PTC due to PTC's multiple misrepresentations and/or omissions of material facts made over several years in the underwriting and issuance of those insurance policies. In Count III and IV, SECURA seeks, in the alternative, to reform *nunc pro tunc* multiple insurance policies that SECURA issued to PTC due to PTC's multiple misrepresentations and/or omissions of material fact made over several years in the

underwriting and issuance of those insurance policies. In Count V and Count VI, SECURA seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 confirming that SECURA does not have a current duty to defend or indemnify PTC for claims asserted against PTC in a tort bodily injury action filed by LARRY CANNON regarding injuries Mr. Cannon suffered at an off-track betting facility known as Club Hawthorne Corliss at 11203 Corliss Avenue, Chicago, IL ("the 11203 Corliss Ave. OTB Location").

## PARTIES, JURISDICTION AND VENUE

2. Effective January 1, 2021, SECURA INSURANCE, A Mutual Company changed its name to SECURA Insurance Company ("SECURA"). SECURA is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Winnebago County, Wisconsin. SECURA is authorized and licensed to issue policies of insurance in the State of Illinois.

3. POST TIME CATERING, INC. ("PTC") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Cook County, Illinois. PTC's operations involve concessionaire food service at the Hawthorne Race Track at 3501 Laramie, Cicero, IL. PTC's operations also involve food service at one or more off-track betting ("OTB") facilities, including the 11203 Corliss Ave. OTB Location at which Mr. Cannon was injured.

4. LARRY CANNON is a resident of Illinois who has recently sued PTC in a tort bodily injury case pending in the Circuit Court of Cook County under the caption <u>Larry Cannon vs. Hawthorne Race Course, Inc. and Post Time Catering, Inc.</u>, Case No. 2021 L 003142 ("the <u>Cannon</u> Lawsuit"). SECURA does not seek any declaratory relief or any other recovery directly against Mr. Cannon in this action. Nevertheless, Mr. Cannon is a necessary party to the declaratory

judgments requested by SECURA in Counts IX and X below because he has a tangible interest in the outcome of those declaratory judgments.

5.     There is complete diversity of citizenship among all parties and the amount in controversy in this case exceeds $75,000.00, thus original jurisdiction in this District Court is proper pursuant to 28 U.S.C. § 1332.

6.     This District Court further has jurisdiction over the declaratory judgments requested in Counts IX and X below pursuant to 28 U.S.C. § 2201 for the purpose of resolving an actual controversy between the parties. The currently pending <u>Cannon</u> Lawsuit does not involve any of the rescission issues nor any of the declaratory judgment issues that are involved in this lawsuit between SECURA and PTC.

7.     Venue in this District Court is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Respondent PTC's residence and Respondent Mr. Cannon's residence are within the jurisdiction of this District Court, and because a substantial part of the events, misrepresentations and omissions giving rise to this action occurred within the jurisdiction of this District Court, including the following activities: SECURA's policy was issued to PTC in Chicago based on multiple misrepresentations that PTC made from its Cook County operations and through its Cook County broker; Mr. Cannon's accident happened in Cook County; and Mr. Cannon's lawsuit is pending in the Circuit Court of Cook County.

8.     The insurance coverage issues involved in all of the Counts in this action are governed by Illinois law. SECURA's policies were issued to PTC, an Illinois corporation, with operations in Cook County, through its Cook County broker. Illinois has the most interests in the resolution of the rescission and reformation issues presented in Counts I through VIII. Illinois has the most interest in the resolution of the declaratory judgment issues presented in Counts IX and

X regarding the <u>Cannon</u> Lawsuit currently pending in the Circuit Court of Cook County regarding an accident that occurred at the 11203 Corliss Ave. OTB Location in Chicago, Illinois.

## STATEMENT OF FACTS

### FACTS REGARDING INSURANCE POLICIES THAT SECURA ISSUED TO PTC

9.     SECURA first began issuing general liability policies as well as umbrella liability policies to PTC in 2006. SECURA has renewed its general liability policies and umbrella liability policies in each policy period from 2006 to date.

10.     In paragraphs below, SECURA will collectively refer to the policies that it issued between 2012 and 2020 as "SECURA's 2012-2020 Policies". SECURA does not attach copies of SECURA's 2012-2020 Policies as exhibits to this pleading, but will produce copies of them as part of its Rule 26 Initial Disclosures.

11.     SECURA issued to PTC a Commercial Protection Policy # CP-003118900, with an original effective policy period of January 1, 2021 to January 1, 2022, to PTC as named insured ("SECURA's Current CGL Policy"). A true and correct copy of SECURA's Current CGL Policy is attached hereto as **Exhibit A**.

12.     SECURA's Current CGL Policy provides a grant of commercial general liability coverage to PTC with a $1 million per occurrence limit and $2 million general aggregate limit.

13.     SECURA issued a Commercial Umbrella Policy # CU-003118902, with an original effective policy period of January 1, 2021 to January 1, 2022, to PTC as named insured ("SECURA's Current Umbrella Policy"). A true and correct copy of the SECURA's Current Umbrella Policy is attached hereto as **Exhibit B**.

14.     SECURA's Current Umbrella Policy provides a grant of umbrella coverage to PTC for commercial general liability above SECURA's Current CGL Policy, with a $5 million per occurrence limit and $5 million aggregate limit.

15.     SECURA sent written notice to PTC, through two letters dated July 6, 2021, advising PTC that SECURA's Current CGL Policy and SECURA's Current Umbrella Policy would be cancelled early, effective September 15, 2021 at 12:01 AM CST. SECURA stated in these two letters that the reason for the early cancellation was based on multiple misrepresentations and omissions of material facts that PTC made in the underwriting and issuance of these policies, as well as other earlier policies. SECURA further stated in these two letters that SECURA reserved its ability to seek rescission of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy back to the date of policy inception.

**FACTS REGARDING OTHER RELEVANT**
**CURRENT INSURANCE POLICIES**

16.     Scottsdale Insurance Company issued a commercial general liability policy #CPS7243271, effective September 15, 2020 to September 15, 2021, to both Hawthorne Race Course, Inc. and PTC as named insureds ("Scottsdale's Current CGL Policy").

17.     Scottsdale's Current CGL Policy provides a grant of commercial general liability coverage to PTC with a $1 million per occurrence limit and a $2 million general aggregate limit

18.     Acceptance Indemnity Insurance Company issued an umbrella liability insurance policy # XL00019149, effective September 15, 2020 to September 15, 2021, to both Hawthorne Race Course, Inc. and PTC as named insureds ("Acceptance Indemnity's Current Umbrella Policy").

19.     Acceptance Indemnity's Current Umbrella Policy provides a grant of umbrella coverage to PTC for commercial general liability above Scottsdale's Current CGL Policy, with a $5 million per occurrence limit and a $5 million general aggregate limit

20.     Arch Insurance Company issued a commercial general liability policy through certificate number SNCGL1858100, as a part of Master Policy Number SJCGL0000203, effective August 1, 2020 to August 1, 2021 to the following named insureds: Hawthorne Race Course, Inc., Suburban Downs, Inc., Thomas Carey Heirs, LLC and Carey Heirs Properties, LLC ("Arch's Current CGL Policy").

21.     Arch's Current CGL Policy provides a grant of commercial general liability coverage to the Hawthorne Race Course, Inc., with a $1 million per occurrence limit and a $5 million general aggregate limit.

## FACTS REGARDING SEVERAL KEY DIFFERENCES BETWEEN THE CURRENT CGL POLICIES

22.     SECURA's Current CGL Policy was issued through insurance agent McNellis & Company, Inc. Whereas, Scottsdale's Current CGL Policy was issued through insurance agent Benchmark Management Group and Arch's Current CGL Policy was issued through insurance agent American Specialty Insurance & Risk Services, Inc. d/b/a A.S.I.R.S.I. Insurance Agency.

23.     The declaration pages of SECURA's Current CGL Policy lists PTC's "Business Description" as "Restaurants – operated by concessionaires – Other than Not-for-Profit". Whereas, the declaration pages of Scottsdale's Current CGL Policy lists PTC's "Business Description" as "FREE STAND OFF TRACK/BETTING PARLOR". The declaration pages of Arch's Current CGL Policy lists Hawthorne Race Course, Inc.'s "Business Description" as "Horse Track".

24.     The declaration pages of SECURA's Current CGL Policy list one and only one location for PTC's operations, that sole location being: the Hawthorne Race Track at 3501

Laramie, Cicero, IL. The declaration pages of Arch's Current CGL Policy list one and only one location as the covered "Designated Premises", that sole location being: the Hawthorne Race Track at 3501 Laramie, Cicero, IL. Whereas, the declaration pages of Scottsdale's Current CGL Policy list the 11203 Corliss Ave. OTB Location as Premises No. 1 along with nine other different off-track betting facilities as covered "Designated Premises". The Hawthorne Race Track at 3501 Laramie, Cicero, IL. is not one of the ten listed covered "Designated Premises" in Scottsdale's Current CGL Policy.

25.     SECURA's Current CGL Policy does not include a designated premises endorsement form. Whereas, Scottsdale's Current CGL Policy includes a designated premises endorsement form CG 21 44 04 17, which limits the available commercial general liability coverage, subject to other terms and conditions, to "bodily injury" or "property damage" that occurs on the premises of the ten different off-track betting facilities listed on the declaration pages of Scottsdale's Current CGL Policy. Arch's Current CGL Policy includes a designated premises endorsement form CG 21 44 04 17, which limits the available commercial general liability coverage, subject to other terms and conditions, to "bodily injury" or "property damage" that occurs on the premises of the Hawthorne Race Track at 3501 Laramie, Cicero, IL

26.     SECURA's Current CGL Policy was initially issued with a premium charge of $10,220.00 based on PTC's estimated gross annual sales figures of $2,105,000.00. That premium charge for SECURA's Current CGL Policy was reduced down to only $1,997.00 after PTC's estimated gross annual sales figures were reduced down to $319,300.00. Whereas, Scottsdale's Current CGL Policy was issued with a total premium charge of $64,552.00 and Arch's Current CGL Policy was issued with a total premium charge of $64,552.00.

## PTC'S MISREPRESENTATIONS AND OMISSIONS OF MATERIAL FACTS – LOCATIONS AT WHICH PTC HAD OPERATIONS

7

27.    SECURA's Current CGL Policy includes a General Liability Amendatory Endorsement Form CGE 1000 1001, which provides as follows:

**6.  Representations**

By accepting this policy, you agree:

a.   The statements in the Declarations are accurate and complete;
b.   Those statements are based upon representations you made to us; and
c.   We have issued this policy in reliance upon your representations.

You must notify us in writing, as soon as practicable, if any information to issue this policy has a material change. This policy may be adjusted to reflect these changes in accordance with our forms, rules and rates in effect at the time of the change.

28.    An identical provision, or substantially similar provision as set forth in the Paragraph above, is included in each and every of SECURA's policies issued to PTC.

29.    During the underwriting of each and every of SECURA's policies, as well as during the underwriting of SECURA's Current CGL Policy, PTC represented to SECURA that the one and only location for PTC's operations was at the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

30.    PTC made this representation to SECURA as described in the Paragraph above on multiple occasions, including but not limited to: (1) the July 27, 2006 Commercial Insurance Application form prepared by PTC's broker; (2) during the August 30, 2006 loss control survey conducted by SECURA at the Hawthorne Race Track at 3501 Laramie, Cicero, IL; (3) during the February 23, 2011 loss control survey conducted by SECURA's agent US-Reports, Inc. at the Hawthorne Race Track at 3501 Laramie, Cicero, IL; and (4) in subsequent communications for renewal of SECURA's policies.

31.    PTC's representation that the one and only location for PTC's operations was at the Hawthorne Race Track at 3501 Laramie, Cicero, IL is incorporated directly into the

8

declaration pages of SECURA's Current CGL Policy, SECURA's Current Umbrella Policy and all of SECURA's 2012-2020 Policies.

32.     On or about August 9, 2010, PTC applied to the Illinois Racing Board for a license to conduct certain operations at the Corliss Ave. OTB. Based on information and belief, PTC has conducted restaurant operations and/or other operations at the 11203 Corliss Ave. OTB Location from at least as early as August 2010 to date.

33.     The Illinois Racing Board issued to PTC License #12-419 on December 20, 2011 authorizing PTC to conduct business as a concessionaire at both the Hawthorne Race Track and the Corliss Ave. OTB location during the calendar year of 2012.

34.     The Illinois Racing Board issued similar annual licenses to PTC from 2012 to date authorizing PTC to conduct business as a concessionaire at both the Hawthorne Race Track and the Corliss Ave. OTB location during the calendar year of 2013 to date.

35.     During the underwriting of SECURA's policies issued after January 2012, as well as during the underwriting of SECURA's Current CGL Policy, PTC omitted and failed to disclose to SECURA that PTC had additional operations at the 11203 Corliss Ave. OTB Location.

36.     PTC's representation that the one and only location for PTC's operations was at the Hawthorne Race Track at 3501 Laramie, Cicero, IL, and PTC's omission of the fact that it also conducted additional operations at the 11203 Corliss Ave. OTB Location were material factors considered by SECURA and which SECURA justifiably relied upon in SECURA's underwriting decision to: (a) issue SECURA's 2012-2020 Policies; (b) to set the premium rates for those policies; and/or (c) to issue those policies with or without one or more endorsement

forms that would have restricted coverage to PTC's concessionaire operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

37.     PTC's representation that the one and only location for PTC's operations was at the Hawthorne Race Track at 3501 Laramie, Cicero, IL and PTC's omission of the fact that it also conducted additional operations at the 11203 Corliss Ave. OTB Location were material factors considered by SECURA and which SECURA justifiably relied upon for SECURA's underwriting decision to: (a) issue SECURA's Current CGL and Umbrella Policies; (b) to set the premium rate for SECURA's Current CGL and Umbrella Policies; and/or (c) to issue SECURA's Current CGL and  Umbrella Policies with or without one or more endorsement forms that would have restricted coverage to PTC's concessionaire operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

38.     The declaration pages of SECURA's 2012-2020 Policies, as well as SECURA's Current CGL and Umbrella Policies, list one and only one location for PTC's operations, that sole location being: the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

## PTC'S MISREPRESENTATIONS AND OMISSIONS OF MATERIAL FACTS – TYPE / NATURE OF PTC's OPERATION

39.     During the underwriting of SECURA's 2012-2020 Policies, as well as during the underwriting of SECURA's Current CGL and Umbrella Policies, PTC represented to SECURA that the one and only type or nature of operation that PTC conducted was a food service restaurant operated by concessionaires.

40.     PTC made this representation to SECURA as described in the Paragraph above on multiple occasions, including but not limited to: (1) the July 27, 2006 Commercial Insurance Application form prepared by PTC's broker; (2) during the August 30, 2006 loss control survey conducted by SECURA at the Hawthorne Race Track at 3501 Laramie, Cicero, IL; (3) during the

February 23, 2011 loss control survey conducted by SECURA's agent US-Reports, Inc. at the Hawthorne Race Track at 3501 Laramie, Cicero, IL; and/or (4) in subsequent communications for renewal of SECURA's policies.

41.     PTC's representation that the one and only type or nature of operation that PTC conducted was a food service restaurant operated by concessionaires is incorporated directly into the declaration pages of SECURA's Current CGL Policy, SECURA's Current Umbrella Policy and all of SECURA's 2012-2020 Policies.

42.     During the underwriting of SECURA's 2012-2020 Policies, as well as during the underwriting of SECURA's Current CGL and Umbrella Policies, PTC omitted disclosing to SECURA and failed to tell SECURA that PTC conducted other additional operations such as the management of certain portions of the premises at the 11203 Corliss Ave. OTB Location.

43.     PTC conducted other additional operations such as the management of certain portions of the premises at the 11203 Corliss Ave. OTB Location from at least as early as 2012 to date.

44.     PTC's representation that the one and only type or nature of operation that PTC conducted was a food service restaurant operated by concessionaires, and PTC's omission of the fact that it also conducted additional operations such as the management of certain portions of the premises at the 11203 Corliss Ave. OTB Location were material factors considered by SECURA and which SECURA justifiably relied upon in SECURA's underwriting decision to: (a) issue SECURA's 2012-2020 Policies; (b) to set the premium rates for those policies; and/or (c) to issue those policies with or without one or more endorsement forms that would have restricted coverage to PTC's concessionaire operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

11

45.     PTC's representation that the one and only type or nature of operation that PTC conducted was a food service restaurant operated by concessionaires, and PTC's omission of the fact that it also conducted additional operations such as the management of certain portions of the premises at the 11203 Corliss Ave. OTB Location were material factors considered by SECURA and which SECURA justifiably relied upon in SECURA's underwriting decision to: (a) issue SECURA's Current CGL and Umbrella Policies; (b) to set the premium rate for SECURA's Current CGL and Umbrella Policies; and/or (c) to issue SECURA's Current CGL and Umbrella Policies with or without one or more endorsement forms that would have restricted coverage to PTC's concessionaire operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

46.     The declaration pages of SECURA's 2012-2020 Policies, as well as SECURA's Current CGL and Umbrella Policies, list the Classification of PTC's operations as only "Restaurants – operated by concessionaires (For Profit)".

## PTC'S MISREPRESENTATIONS AND OMISSIONS OF MATERIAL FACTS – PTC'S GROSS SALES FIGURES

47.     During the underwriting of SECURA's 2012-2020 Policies, PTC represented to SECURA its estimated annual gross sales from its restaurant operations for the purpose of calculating the initial premiums to be charged for each of SECURA's 2012-2020 Policies.

48.     After the expiration of the policy period for each of SECURA's 2012-2020 Policies, SECURA conducted an audit of PTC's actual annual gross sales from its restaurant operations for that completed policy period for the purpose of calculating the final premium to be charged for each of SECURA's 2012-2020 Policies. Each audit consisted of a written questionnaire that PTC returned to SECURA with PTC's actual annual gross sales from its restaurant operations.

12

49.     Based on information and belief, PTC disclosed to SECURA only its estimated and final gross sales from its restaurant operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL. Based on information and belief, PTC's disclosures to SECURA never included its estimated or final gross sales from its restaurant operations at the 11203 Corliss Ave. OTB Location.

50.     PTC's representations regarding its estimated and actual annual gross sales are incorporated directly into the declaration pages of SECURA's Current CGL Policy, SECURA's Current Umbrella Policy and all of SECURA's 2012-2020 Policies.

51.     PTC's representations of its actual annual gross sales from its restaurant operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL and PTC's omission of its actual annual gross sales from its restaurant operations at the 11203 Corliss Ave. OTB Location, were material factors considered by SECURA and which SECURA justifiably relied upon for calculating the final premium to be charged for each of SECURA's 2012-2020 Policies.

52.     PTC's representations of its actual annual gross sales from its restaurant operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL and PTC's omission of its actual annual gross sales from its restaurant operations at the 11203 Corliss Ave. OTB Location, were material factors considered by SECURA and which SECURA justifiably relied upon for calculating the final premium to be charged for SECURA's Current CGL Policy.

53.     The declaration pages of SECURA's 2012-2020 Policies, as well as SECURA's Current CGL Policy, list the estimated and actual annual gross sales from PTC's restaurant operations and the corresponding premium amount charged for that policy period.

### PTC'S OMISSIONS OF MATERIAL FACTS –
### 2005 CLAIM AND CANCELLATION OF 2005 CGL POLICY

54. During the underwriting of SECURA's very first commercial general liability policy in 2006, PTC's broker Anthony Carey represented in an email dated July 27, 2006 to SECURA underwriter Donna Gwidt, the following: (1) that his family members owned PTC; (2) that PTC asked him to get quotes for commercial general liability coverage to begin while PTC's then-current 2005 policy issued by "Utica" was still in force; (3) that PTC had no known general liability losses in the prior five years; and (4) that he would forward loss runs that would confirm no general liability losses in the prior five years. PTC's broker Anthony Carey repeated these four representations in follow up oral conversations he had SECURA underwriter Donna Gwidt shortly before and/or shortly after the email dated July 27, 2006.

55. In addition to being PTC's broker, Anthony Carey is listed on PTC's corporate disclosures filed with the Illinois Secretary of State as currently being the Agent and Secretary of PTC. PTC's corporate disclosures filed with the Illinois Secretary of State also list Timothy Carey as PTC's current President. Jack Carey is a managing partner of PTC and/or he runs the day-to-day operations of PTC. Anthony Carey and Jack Carey are cousins. Based on information and belief, Timothy Carey is Anthony Carey's uncle.

56. Despite the representation made that PTC's broker Anthony Carey would provide copies of loss run reports to SECURA showing no general liability losses in the prior five years, neither Anthony Carey nor any other PTC employee or agent ever sent any loss run reports to SECURA.

57. A general liability claim was made by Mr. Leonel Aburto against PTC for either bodily injury or property damage that occurred on January 17, 2005. Based on information and belief, Mr. Aburto's January 17, 2005 accident occurred at the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

14

58.     PTC submitted Mr. Aburto's claim to its liability policy # R151050724743 issued by Continental Casualty Company with claim # EK801149.

59.     At the time of Anthony Carey's July 27, 2006 email to SECURA, with representations described in Paragraph 49 above, Anthony Carey did not disclose the existence of Mr. Aburto's claim to SECURA. Moreover, Anthony Carey did not disclose the existence of the Continental Casualty Company policy to SECURA. Instead, Anthony Carey represented to SECURA that PTC had a policy in place with "Utica" for two full policy years and that PTC was considering making a mid-term move to SECURA for reasons currently unknown. The basis for the transfer of PTC's liability coverage from Continental Casualty Company to Utica also remains unknown.

60.     PTC's representation that it had no known general liability losses and PTC's promise to submit loss run reports to SECURA showing no general liability losses in the prior five years were material factors considered by SECURA and which SECURA justifiably relied upon in SECURA's underwriting decision to issue SECURA's very first policy in 2006 and in deciding upon the rate to apply to the policy.

61.     Had the SECURA underwriter known about Mr. Aburto's January 17, 2005 claim against PTC during the underwriting of SECURA's very first policy in and around July 2006, SECURA would have performed additional underwriting investigation into the basis of Mr. Aburto's claim to analyze whether to accept the risk of providing liability coverage to PTC.

62.     If discovery had revealed in and around July 2006 that the Utica policy was cancelled short, and had SECURA been made aware of a prior mid-term cancellation, SECURA would have performed additional investigation into the basis of the cancellation to analyze whether to accept the risk of providing liability coverage to PTC.

15

## PTC'S OMISSIONS OF MATERIAL FACTS –
## 2011 CLAIM AND EXISTENCE OF THE SCOTTSDALE INSURANCE POLICY

63.     A general liability claim was made by Mr. Fred Booth against PTC for either bodily injury or property damage that occurred on April 29, 2011. Based on information and belief, Mr. Booth's April 29, 2011 accident occurred at the 11203 Corliss Ave. OTB Location.

64.     PTC submitted Mr. Booth's claim to its liability policy #CPS1265234 issued by Scottsdale Insurance Company with claim # 0136642001. PTC did not provide notice of Mr. Booth's claim to SECURA even though SECURA did issue a general liability policy to PTC in force on the day of Mr. Booth's April 29, 2011 accident.

65.     PTC omitted and failed to disclose to SECURA the existence of the general liability policy #CPS1265234 issued by Scottsdale Insurance Company in effect on the day of Mr. Booth's April 29, 2011 accident. PTC omitted and failed to disclose to SECURA the existence of any other general liability policy issued by Scottsdale Insurance Company to PTC during any other policy period from 2011 to 2021. PTC omitted and failed to disclose to SECURA the existence of Scottsdale's Current CGL Policy.

66.     Had SECURA known about the existence of Mr. Booth's April 29, 2011 claim, SECURA would have learned of PTC's operations at the 11203 Corliss Ave. OTB Location prior to the issuance of SECURA's Current CGL and Umbrella Policies.

67.     Had SECURA known about the existence of Scottsdale's Current CGL Policy and/or any earlier liability policies issued to PTC, SECURA would have learned of PTC's operations at the 11203 Corliss Ave. OTB Location prior to the issuance of SECURA's Current CGL and Umbrella Policies.

## COUNT I – RESCISSION - SECURA'S CURRENT CGL & UMBRELLA POLICY

68. SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

69. PTC made multiple misrepresentations and/or omissions of material fact at various times, including during the renewal of SECURA's Current CGL Policy and the renewal of SECURA's Current Umbrella Policy as detailed above.

70. PTC made the foregoing misrepresentation and/or omissions of material fact with full knowledge and intent that SECURA would rely on said representations and omissions for the renewal of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy.

71. The foregoing misrepresentations and/or omissions were incorporated directly into the declaration pages of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy.

72. The foregoing misrepresentations and/or omissions materially affected SECURA's acceptance of the risk of providing liability coverage to PTC.

73. SECURA justifiably relied upon the foregoing misrepresentation and/or omissions of material fact for the renewal of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy.

74. If SECURA had known the true facts, SECURA would not have issued SECURA's Current CGL Policy or SECURA's Current Umbrella Policy to PTC.

WHEREFORE, SECURA requests that this District Court enter a judicial declaration, in conformity with the Illinois statute 215 ILCS 5/154, declaring that SECURA's Current CGL Policy and SECURA's Current Umbrella Policy are rescinded and void *ab initio*. Subject to that judicial declaration, SECURA also requests that this District Court enter a judicial declaration

permitting SECURA to return to PTC the premium that PTC paid for SECURA's Current CGL
Policy and SECURA's Current Umbrella Policy.

### COUNT II – RESCISSION - SECURA'S PRIOR POLICIES 2012 to 2020

75.     SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through
74 as though fully set forth herein.

76.     PTC made multiple misrepresentations and/or omissions of material fact at various
times, including during the renewal of SECURA's 2012-2020 Policies as detailed above.

77.     PTC made the foregoing misrepresentation and/or omissions of material fact with
full knowledge and intent that SECURA would rely on said representations and omissions for the
renewal of SECURA's 2012-2020 Policies.

78.     The foregoing misrepresentations and/or omissions were incorporated directly into
the declaration pages of SECURA's 2012-2020 Policies.

79.     The foregoing misrepresentations and/or omissions materially affected SECURA's
acceptance of the risk of providing liability coverage to PTC in the renewal SECURA's 2012-2020
Policies.

80.     SECURA justifiably relied upon the foregoing misrepresentation and/or omissions
of material fact for the renewal of SECURA's 2012-2020 Policies.

81.     If SECURA had known the true facts, SECURA would not have issued SECURA's
2012-2020 Policies to PTC.

WHEREFORE, SECURA requests that this District Court enter a judicial declaration, in
conformity with the Illinois statute 215 ILCS 5/154, declaring that SECURA's general liability
policies and umbrella policies issued from 2012 to 2020 are rescinded and void *ab initio*. Subject
to that judicial declaration, SECURA also requests that this District Court enter a judicial

declaration permitting SECURA to return to PTC the premium that PTC paid for SECURA's general liability policies and umbrella policies from 2012 to 2020.

## COUNT III – REFORMATION - SECURA'S CURRENT CGL & UMBRELLA POLICY

82. SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 81 as though fully set forth herein.

83. PTC made multiple misrepresentations and/or omissions of material fact at various times, including during the renewal of SECURA's Current CGL Policy and the renewal of SECURA's Current Umbrella Policy as detailed above.

84. PTC made the foregoing misrepresentation and/or omissions of material fact with full knowledge and expectation that SECURA would rely on said representations and omissions for the renewal of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy.

85. SECURA justifiably relied upon the foregoing misrepresentation and/or omissions of material fact for the renewal of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy.

86. Pleading in the alternative to Count I above, if SECURA had known the true facts, SECURA would have issued SECURA's Current CGL Policy and SECURA's Current Umbrella Policy with one or more endorsement forms that would have restricted coverage to PTC's concessionaire operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL

WHEREFORE, SECURA requests that this District Court enter a judicial declaration that SECURA's Current CGL Policy and SECURA's Current Umbrella Policy are reformed *nunc pro tunc* to limit the available liability coverage, subject to other terms and conditions, to "bodily injury" or "property damage" caused by an "occurrence" that takes place on the premises of the Hawthorne Race Track at 3501 Laramie, Cicero, IL and arises out of PTC's concessionaire

operations, or to "personal and advertising injury" caused by an offense performed on the premises of the Hawthorne Race Track at 3501 Laramie, Cicero, IL and in connection with PTC's concessionaire operations.

## COUNT IV – REFORMATION - SECURA'S PRIOR POLICIES 2012 to 2020

87.     SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 86 as though fully set forth herein.

88.     PTC made multiple misrepresentations and/or omissions of material fact at various times, including during the renewal of SECURA's policy periods from 2012 to 2020 as detailed above.

89.     PTC made the foregoing misrepresentation and/or omissions of material fact with full knowledge and expectation that SECURA would rely on said representations and omissions for the renewal of SECURA's policy periods from 2012 to 2020.

90.     SECURA justifiably relied upon the foregoing misrepresentation and/or omissions of material fact for the renewal of SECURA's policy periods from 2012 to 2020

91.     Pleading in the alternative to Count II above, if SECURA had known the true facts, SECURA would have issued SECURA's 2012-2020 Policies with one or more endorsement forms that would have restricted coverage to PTC's concessionaire operations at the Hawthorne Race Track at 3501 Laramie, Cicero, IL.

WHEREFORE, SECURA requests that this District Court enter a judicial declaration that SECURA's 2012-2020 Policies are reformed *nunc pro tunc* to limit the available liability coverage, subject to other terms and conditions, to "bodily injury" or "property damage" caused by an "occurrence" that takes place on the premises of the Hawthorne Race Track at 3501 Laramie, Cicero, IL and arises out of PTC's concessionaire operations, or to "personal and advertising

injury" caused by an offense performed on the premises of the Hawthorne Race Track at 3501 Laramie, Cicero, IL and in connection with PTC's concessionaire operations.

## COUNT V - DECLARATORY JUDGMENT
## NO DUTY TO DEFEND PTC IN THE *CANNON* LAWSUIT

92.     SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

93.     On March 23, 2021, Mr. Cannon filed his Complaint in the Cannon Lawsuit against Hawthorne Race Track, Inc. as the sole defendant. On April 22, 2021, Mr. Cannon filed his 1st Amended Complaint in the Cannon Lawsuit, which added PTC as a named defendant. A true and correct copy of Mr. Cannon's 1st Amended Complaint is attached hereto as **Exhibit C**.

94.     In his pleadings in the Cannon Lawsuit, Mr. Cannon alleges that he suffered bodily injuries on February 17, 2021 while he was a customer at the 11203 Corliss Ave. OTB Location. Specifically, Mr. Cannon alleged that he was injured at the 11203 Corliss Ave. OTB Location when an outdoor patio awning covering collapsed due to the weight of fallen snow and fell on top of him.

95.     In his pleadings in the Cannon Lawsuit, Mr. Cannon alleges that PTC had a duty to maintain the premises at the 11203 Corliss Ave. OTB Location, and that PTC "managed and maintained" the outdoor patio at that location. (1st Amended Complaint, Count II, ¶¶ 3, 8-10).

96.     PTC forwarded a copy of Mr. Cannon's original Complaint and his 1st Amended Complaint to SECURA. PTC requested that SECURA defend PTC's interests in the Cannon Lawsuit and that SECURA indemnify PTC for any judgment or settlement of the claims asserted against PTC in the Cannon Lawsuit.

97.     SECURA advised PTC that it would begin conducting a review of coverage issues while it retained the services of attorney Tom Cameli at the Cameli Hoag law firm to defend PTC's

interests in the Cannon Lawsuit. Attorney Cameli began some defense services for PTC but did not file a formal appearance on behalf of PTC in the Cannon Lawsuit.

98.     SECURA sent correspondence dated May 28, 2021 to PTC in which SECURA raised facts supporting its concerns about misrepresentations that PTC made to SECURA in the underwriting process over several years.

99.     In response to SECURA's May 28, 2021 correspondence, PTC requested, through an email dated June 17, 2021, that its interests in the Cannon Lawsuit be represented by independent counsel of its own choosing, specifically attorney Michael Mullen at the Kralovec & Marquard law firm. SECURA agreed that Attorney Mullen could represent and defend PTC in the Cannon Lawsuit.

100.    Attorney Mullen's law firm filed a formal appearance on behalf of PTC in the Cannon Lawsuit on or about June 23, 2021. The transference of Attorney Cameli's file to Attorney Mullen was completed on or about June 29, 2021.

101.    SECURA sent correspondence dated June 24, 2021 to PTC's coverage counsel, Attorney David Anderson, in which SECURA advised PTC that SECURA would not pay for Attorney Mullen's defense activities in the Cannon Lawsuit and would not otherwise defend PTC in the Cannon Lawsuit.

102.    PTC also forwarded a copy of Mr. Cannon's original Complaint and/or his 1st Amended Complaint to Scottsdale Insurance Company. PTC requested that Scottsdale Insurance Company defend PTC's interests in the Cannon Lawsuit and/or that Scottsdale Insurance Company indemnify PTC for any judgment or settlement of the claims asserted against PTC in the Cannon Lawsuit.

103.    Nationwide E&S Specialty, the parent company of the Scottsdale Insurance Company, wrote a letter dated June 10, 2021 to PTC in which it acknowledged that Scottsdale's Current CGL Policy would normally provide primary coverage to PTC for the claims asserted in the Cannon Lawsuit. However, the June 10, 2021 letter further took the position, based on an "other insurance" provision, that Scottsdale's Current CGL Policy provided excess coverage for the claims asserted in the Cannon Lawsuit due to the assumed application of SECURA's Current CGL Policy. The June 10, 2021 letter stated, "Nevertheless, while the Company has no current obligation to defend or indemnify PTC against the Lawsuit, the Company is prepared to respond on PTC's behalf should the SECURA Policy be exhausted."

104.    SECURA does not owe a duty to defend PTC for the claims asserted against PTC in the Cannon Lawsuit due to the full rescission of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy as set forth in Count I herein. In the alternative, SECURA does not owe a duty to defend PTC for the claims asserted against PTC in the Cannon Lawsuit due to the reformation of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy as set forth in Count III herein.

105.    Pursuant to Illinois precedent as articulated in *Those Certain Underwriters at Lloyd's v. Professional Underwriters Agency, Inc.*, 364 Ill. App. 3d 975 (2nd Dist. 2006), any arguable obligation for an insurer to act on a duty to defend an insured is held in abeyance during the pendency of that insurer's petition for rescission or reformation of its insurance policy.

106.    PTC takes the position that SECURA does owe a current duty to defend PTC for the claims asserted against PTC in the Cannon Lawsuit. Thus, there is a current actual controversy between SECURA and PTC regarding these coverage issues which should be resolved with a declaratory judgment from this District Court pursuant to 28 U.S.C. § 2201.

WHEREFORE SECURA requests that this District Court enter a judicial declaration finding that SECURA did not and does not owe PTC a duty to defend PTC for the claims asserted against PTC in the Cannon Lawsuit.

## COUNT V - DECLARATORY JUDGMENT
## NO DUTY TO INDEMNIFY PTC IN THE *CANNON* LAWSUIT

107.    SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 106 as though fully set forth herein.

108.    SECURA will never owe a duty to indemnify PTC for the claims asserted against PTC in the Cannon Lawsuit due to the full rescission of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy as set forth in Count I herein. In the alternative, SECURA will never owe a duty to indemnify PTC for the claims asserted against PTC in the Cannon Lawsuit due to the reformation of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy as set forth in Count III herein.

109.    PTC takes the position that recission and/or reformation of SECURA's Current CGL Policy and SECURA's Current Umbrella Policy is not warranted and, therefore, SECURA will owe a duty to indemnify PTC for the claims asserted against PTC in the Cannon Lawsuit. Thus, there is a current actual controversy between SECURA and PTC regarding these coverage issues which should be resolved with a declaratory judgment from this District Court pursuant to 28 U.S.C. § 2201.

WHEREFORE SECURA requests that this District Court enter a judicial declaration finding that SECURA will never owe a duty to indemnify PTC for the claims asserted against PTC in the <u>Cannon</u> Lawsuit.

Respectfully submitted,

**STONE & JOHNSON, CHTD**

By: _____

Attorneys for Petitioner,
SECURA Insurance Company, f/k/a
SECURA INSURANCE, a Mutual Company

Dawn M. Gonzalez, Esq.
STONE & JOHNSON, CHTD
111 West Washington, Suite 1800
Chicago, Illinois 60602
dgonzalez@stonejohnsonlaw.com
(312) 332-5656
Atty No. 44540

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, being first duly sworn upon oath, depose and state that I caused to be served the foregoing <u>above-mentioned document</u> by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, a copy of which was then forwarded to each attorney of record by CM/ECF on <u>August 30, 2021</u>.

<u>\s\ Tammy McCann</u>